**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DARIUS HUGHES,** | ) | **CASE NO.1:24CV790** |
| | ) | |
| **Plaintiff** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **SPEEDWAY, LLC.,** | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| **Defendant** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Speedway, LLC.'s Motion Summary

Judgment.  (ECF # 47).  For the following reasons, the Court grants the Motion.

**Background Facts**

This case arises out of Plaintiff Darius Hughes' slip and fall at Defendant's gas station on

or about February 13, 2021.  Plaintiff stopped at Defendant's Speedway gas station for gas and

upon exiting his vehicle slipped on a patch of ice.  According to Plaintiff, the ice was

indiscernible and not open and obvious.  He further asserts it was caused by water dripping from

a canopy drain hole overhead that was not properly maintained.

**Speedway's Motion for Summary Judgment**

According to Speedway, immediately after slipping and falling on ice, Hughes did not

seek medical attention nor did he warn store employees of the dangerous icy condition but

instead, began taking photographs of the area in anticipation of a lawsuit.  Speedway asserts that

it is Hughes' own photographs that ultimately defeat his case as they show the ice he slipped on was open and obvious.

Ohio law recognizes the "no duty winter rule" wherein a business owner owes no duty to a business invitee to remove natural accumulations of ice and snow, nor do they owe customers a duty to warn them of the same.  Speedway argues that Hughes' own photographs of the scene of the slip and fall at the time of the incident show clearly that the ice he slipped on was visible, open and obvious.  In fact, ice and snow are visible all around the gas station lot as would be expected in the greater Cleveland area in February.  Not only that, but Hughes has no evidence the ice formed as the result of an unnatural accumulation.   The weather reports from the time period indicate sub freezing temperatures on the day of and for days before the incident.  Consequently, Hughes cannot produce any evidence that the ice he slipped on formed from water dripping from a drain hole in the canopy that covers the pumps at the North Royalton Speedway.

The North Royalton Speedway was constructed in 1976.  In 2022, the canopy was reconstructed.  Both the original canopy and the reconstructed canopy contain four secondary overflow drain holes situated near the four corners of the canopy and are visible from ground level.  The City of North Royalton approved the canopy design which includes the overflow holes in 1976 and again in 2022.  The overflow drain holes serve an important purpose in that they allow water to drain when the interior drains are unable to handle downpours or heavy accumulations of snow and ice, thus preventing a collapse of the canopy from excessive weight of water, snow or ice.  The drain holes were intentionally installed as an emergency safety measures.

When Hughes arrived at the Speedway on February 13, 2021 to buy gas, he

2

acknowledged it had snowed a few days prior and it was really cold.  (Hughes depo. pg 14.).   He further testified there was snow on the ground in the grassy areas of the Speedway.  (*Id.* at 15).  Hughes took a picture sometime after the incident of water coming out of the canopy drain but concedes it might of been some months later.  (*Id,*  at 16).  He did not see water dripping from the drain hole on the day he slipped.  (*Id.*  at 22).  Hughes could not say whether the ice he slipped on formed from water dripping out of the drain. (*Id)*.  Neither is there any evidence that Speedway knew the dripping water from the emergency drain holes caused any other customer to slip and fall.

As a result, Speedway contends it is entitled to summary judgment because it owed no duty to warn its customers of ice or snow that were the result of normal winter conditions in Cleveland.  The ice Hughes slipped on was not caused by anything other than a natural accumulation and was not substantially more dangerous than normal ice formations from typical winter weather.  Speedway was not on notice that there was a dangerous condition.  Moreover, the pictures taken by Hughes show the ice was an open and obvious danger and Speedway was under no duty to warn its customers of the same.

**Hughes' Opposition**

According to Hughes, genuine issues of fact exist as to whether the ice he slipped on was open and obvious and was caused by an unnatural accumulation of ice as the result of an improperly maintained canopy.

Work orders reflect that the primary drains for the canopy would regularly leak, resulting in manager complaints.  It is only when the primary drains clog or are overwhelmed due to excessive rainfall that water is expelled through the outer canopy drain holes.  Hughes argues that

depositions of Speedway employees show the drains were an ongoing problem.  They further testified that it was important to salt around pump #8, the location of Hughes slip and fall, due to the overflow from the outer drain holes that would freeze on the ground in cold weather.

Contrary to Speedway's interpretation, photos of the ice in question reveal it was not open and obvious or, at the least, present an issue of fact whether it was open and obvious.  Testimony supports the conclusion that water only spills from the outer drain holes when the canopy fills to over a foot of water.  If there is a foot of water and it is not due to a heavy rainfall, the logical conclusion is the center drains are clogged and were not properly maintained.  This is supported by the deposition testimony of Speedway employees and the opinions of Hughes' expert.

Moreover, Hughes contends that the ice formation he slipped upon was not a natural accumulation but instead was an unnatural accumulation as it resulted from the water draining from the man-made canopy.  Because the central drains were not draining properly due to poor maintenance, Hughes contends this means the accumulation was unnatural and therefore results in a duty upon Speedway to warn its customers of the same.

**LAW AND ANALYSIS**

**Standard of Review**

Summary judgment shall be granted only if  "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a).  The burden is on the moving party to conclusively show no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  The moving party must either point to "particular

parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Speedway Duty to Business Invitees**

Under Ohio's premises liability law, a plaintiff asserting a negligence claim must show that the defendant owed the plaintiff a duty of care, defendant breached that duty and the breach proximately caused plaintiff's injuries.  *Kohler v. Kohl's Dep't Stores, Inc.,* No. 1:18CV468, 2020 WL 6319171, at *2 (N.D. Ohio Sept. 8, 2020).  In this case, Hughes must show that Speedway's officers or employees were responsible for the ice he slipped on; or that Speedway, through its employees, had actual knowledge of the ice and neglected to give adequate notice of its presence or remove it promptly; or that the ice existed for a sufficient period of time "reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care." *Id.*

As defined by Ohio law, a business invitee is a person who is on the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner. *Light v. Ohio Univ.,* 28 Ohio St.3d 66, 502 N.E.2d 611, 613 (1986); *Mota v. Gruszczynski,* 197 Ohio App.3d 750, 968 N.E.2d 631, 636 (2012).  ("Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner.") (citation and quotation marks omitted).  As a business invitee, Speedway owed Hughes a duty to exercise ordinary care and to maintain the premises in a safe condition.  See *Mosholder v. Lowe's Home Centers, LLC,* 444 F. Supp. 3d 823, 827 (N.D. Ohio 2020).  There is no dispute that Hughes was a business invitee of Speedway at the time the incident occurred.

**Actual or Constructive Notice**

Ohio's "no-duty winter rule," provides that a business owner "ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow from the premises or to warn

6

invitees of the dangers associated with such natural accumulations of ice and snow." *Hosler v. Shah*, No. L-12-1066, 2012 WL 599213, at *2 (Ohio Ct. App. Nov. 30, 2012) (citation omitted). An exception to the "no-duty winter rule" is if Defendant "is shown to have had notice, actual or implied, that a natural accumulation of snow and ice on [its] premises has created a condition substantially more dangerous than a business invitee should have anticipated by reason of the knowledge of conditions prevailing generally in the area...." *Madaras v. Applebee's Neighborhood Grill & Bar,* 2025-Ohio-169, ¶ 26, 264 N.E.3d 851, 858 quoting *Bailey v. St. Vincent DePaul Church,* 1997 WL 232685, *2 (8th Dist. May 8, 1997).   According to the Ohio Supreme Court, "it is essential that the evidence show [that the hazard] continued for a period of time sufficient to charge the defendant with constructive notice thereof." *Kokinos v. Ohio Greyhound, Inc.,* 153 Ohio St. 435, 438, 92 N.E.2d 386 (1950).

In the *Madaras* case, plaintiff was injured when she slipped on black ice as she entered defendant's restaurant.  Plaintiff alleged the ice was caused by water dripping from a canopy over th entrance.  The Ohio appellate court affirmed the trial court's granting of summary judgment for defendant.  In so doing the court held, "here, the record does not contain evidence that the awning was dripping on the date Madaras slipped or that the awning had a known or persistent dripping problem.  There was, furthermore, no evidence that Applebee's, through its employees, knew that there was a potentially unsafe condition outside because no one else had complained or slipped in that area." *Madaras,* 2025-Ohio-169, ¶ 28.  Moreover it held, "[b]eyond allegations and speculation, there are no material facts in the record demonstrating a nexus between the icy patch and the canopy." *Id.*

In discovery, the parties deposed a number of Defendant's current and former employees.

Defendant's employee Thomas Hogue, a maintenance technician, testified he was unaware of any leaking issues at the Speedway in question and that he had never been called to repair a leak at that location.  (ECF # 25-1 pg. 17).  Anthony Rhodes, an assistant manager for Speedway, testified he did not believe ice formed by pump #8, or at least, not more regularly than elsewhere on the premises.  (ECF # 26-1 pg. 22) He had no knowledge that anyone else slipped on ice at that location. (*Id* at 54).  Nor did he ever observe water drip from the canopy hole on a cold day. (*Id* at 58).

Jerome Lazarony, an area service manager and former maintenance manager for Speedway, testified that when there was water overflow from the canopy they would instruct store operations to salt the area below the canopy overflow and put up safety cones.  (ECF #27-1 pg. 17).  Daniel Sarinana, a lead maintenance  technician for Speedway, testified he saw water dripping from the drain holes dozens of times a year and that it could cause ice to form on the ground, presenting a slip and fall hazard.  (ECF # 28-1 pg 16-17).  He never saw water pooling under the drain hole or ice form beneath it.  (*Id.* at 17).  Instead, he said the water flows down to the edge of the street. (*Id*. at 18).  Sarinana testified that from 2018 to 2020 at least four work orders were issued due to employees reporting water spilling from the drain holes but no repairs were affected because the drain holes were operating as intended.  (*Id.* at 19-26).  Mittie Russell, a Speedway co-manager form 2018 to 2020,  testified that it was common for ice to form around the edge of the canopy but particularly around the corner where Hughes fell. (ECF# 31-1 pg 17). She further testified she put in work orders for it to be fixed because water was leaking but could not remember if anything was done about it. (*Id*. at 19-20).  Russell testified she fell on black ice at the Speedway in question but in a different location from that where Hughes slipped and fell.

(*Id*. at 24).

Hughes slipped as soon as he stepped out of his car. He did not know the ice was there prior to his fall. He did know it was cold and there was snow on the ground around the grassy areas of the Speedway. In addition, his photos show ice and snow around the pumps. He did not know how the ice formed, nor how long it was there, nor did he see any water dripping from the canopy on the day of the incident.

In *Cullman v. United States Postal Serv.,* No. 2:18-CV-01335, 2020 WL 868208, at *5 (S.D. Ohio Feb. 21, 2020)*,* the district court granted summary judgment for defendant in a slip and fall case. Cullman had stopped to mail a package at the defendant post office when she noticed ice on the ground with orange cones indicating its presence. Despite trying to navigate around the ice, she fell because she did not know the ice extended as far as where she was walking. The district court held that the ice was a natural accumulation, was open and obvious and defendant had no greater knowledge of the ice than Cullman. Cullman had an engineering expert opine that the ice formed from drains on the roof of the post office building that drained onto landscaping around the building but the post office subsequently put a cement pad on the spot where the drain water spilled causing it run onto the sidewalk and form ice. While the district court found this could potentially demonstrate the ice was due to a unnatural accumulation, Cullman failed to offer evidence that the post office or its employees knew the root cause of the ice and did nothing about it.

The district court in *Cullman* then cited a number of cases for the proposition that a defendant's general knowledge of ice forming at a certain location in the past did not satisfy plaintiff's burden to show the business owner had actual or constructive knowledge of a danger

9

sufficient to show negligence.  The *Cullman* court rejected evidence from a post office employee that he saw the ice "sometime prior" to plaintiff's fall along with plaintiff's own declaration that "defendant knew of the ice for sometime" as insufficient to show negligence.   It then compared the case of  *Tyrrell v. Inv. Associates, Inc.,* 474 N.E.2d 621, 623 (Ohio Ct. App. 1984) (holding that pharmacy could potentially owe a duty where the pharmacist had been "aware for several years that water occasionally dripped from the edge of the canopy and formed ice in front of his store") with *Evans v. Jeff Wyler Chrysler Jeep Dodge Ram of Springfield,* 111 N.E.3d 901, 922–23 (Ohio Ct. App. 2018). ("In other words, even if Wyler possessed a general awareness of a need to salt or resalt the area, such knowledge is insufficient to impute actual or constructive knowledge of the specific condition that Evans alleged existed near the large grate, and summary judgment was accordingly properly granted.").  The *Cullman* court distinguished its case and cited to  *Bryant v. Indus. Power Sys., Inc.,* 111 N.E.3d 827, 831 (Ohio Ct. App. 2018) (finding no active negligence where "the record contain[ed] no evidence that appellees were aware of the condition that caused the unnatural accumulation of ice") and  *Sleeper v. Casto Mgt. Servs.,* No. 12AP-566, 2013 WL 3963459, at *10 (Ohio Ct. App. July 30, 2013) ("In the absence of some evidence indicating that Casna had knowledge of the leaky gutter, we cannot find that Casna was actively negligent in creating or permitting the ice to exist in the parking lot").  Ultimately, the court in Cullman granted summary judgment because plaintiff could not show defendant knew of the root cause of the ice formation and did nothing to remedy it and further held the danger was open and obvious from the photographs taken at the location.

Here, Hughes has produced evidence that Speedway employees knew that icing under the canopy drain hole was a hazard that they had to salt regularly and that they reported it but nothing

10

was done to remedy the situation.

Thus the Court finds there are genuine issues of fact concerning whether Speedway had knowledge of the danger presented by the ice formation under the drain hole but failed to warn its customers.

**Unnatural Accumulation of Ice or Snow**

Another exception to the "no duty winter rule" is if the injury is caused by an unnatural accumulation of ice or snow.  "An 'unnatural' accumulation is one created by causes and factors other than natural meteorological forces," which "include inclement weather conditions, low temperatures, drifting snow, strong winds, and freeze cycles." *Thatcher v. Lauffer Ravines, L.L.C.*, 2012-Ohio-6193, 2012 WL 6738492, ¶ 17 (10th Dist.).  Thus, "unnatural accumulations are caused by the intervention of human action doing something that would cause ice and snow to accumulate in unexpected places and ways." *Id.*

Here, there are genuine issues of fact whether the ice upon which Hughes slipped was an unnatural accumulation caused by the drain holes leaking water onto the ground which then froze over.  As the Court has already discussed, Speedway employees testified that the canopy would pour water onto the ground around the pump where Hughes fell and that it would freeze requiring salting to eliminated the dangers.  Plaintiff's expert Richard L. Zimmerman, opines that the ice accumulation happened because the canopy overhead was not properly maintained and that proper maintenance would have prevented the icy condition that resulted in Hughes' injury.

As a result, the Court holds genuine issues of fact militate against summary judgment on the question whether Hughes' slipped on a natural vs. unnatural accumulation of ice.

**Open and Obvious**

Lastly, even if the ice were the result of an unnatural accumulation, a business owner is not liable if the hazard is open and obvious. "Where a danger is not latent or hidden, but instead is 'open and obvious,' a landowner or business owner owes no duty of care to individuals lawfully on the premises." *Jackson v. J-F Ents.,* 2011-Ohio-1543, 2011 WL 1167756, ¶ 16 (6th Dist.).  As the court in *Kohler* stated:

> Open and obvious conditions serve as their own warning because, as the name suggests, the danger is open and obvious.  The legal implications are important here.  Open and obvious hazards carry no duty on the store owner's part, and a negligence claim will fail as a result.  The burden is on the landowner, however, to show that a hazard is open and obvious.  The logic behind this rule also makes sense.  Retailers like Kohl's can reasonably expect shoppers to discover and to take care when it comes to open and obvious hazards.

> The claimant doesn't need to observe directly the hazard for it to be open and obvious. The hazard needs only to be observable for it to be classified as open and obvious.  What this means is that the standard for determining an open and obvious hazard, and more specifically whether the hazard was observable, is an objective one. "The focus of this analysis is 'the nature of the dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it.'  As applied to this case then, Kohler might not have seen the puddle before she fell, but that doesn't mean it wasn't open and obvious.

*Kohler v. Kohl's Dep't Stores, Inc.,* No. 1:18CV468, 2020 WL 6319171, at *4 (N.D. Ohio Sept. 8, 2020).

A business owner "is not an insurer of its invitees' safety against all forms of accident that may happen."  *Armstrong v. Lakes Golf & Country Club, Inc.,* 2018-Ohio-1018, ¶ 27, 98 N.E.3d 328, 334.  "The rationale of the open and obvious doctrine is that the open and obvious nature of the hazard itself serves as a warning, so that owners reasonably may expect their invitees to discover the hazard and take appropriate measures to protect themselves against it. *Id* citing

12

*Simmers v. Bentley Constr. Co.,* 64 Ohio St.3d 642, 597 N.E.2d 504 (1992).  "When applicable, however, the open-and-obvious doctrine obviates the duty to warn and acts as a complete bar to any negligence claims." *Armstrong,* 99 Ohio St.3d at 80, 788 N.E.2d 1088.  "It is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Id* at 82, 788 N.E.2d 1088, 1090.  When determining whether a hazard is open and obvious, the question "is not whether [a plaintiff] observes the condition, but whether the condition is capable of being observed." *Hernandez-Butler v. Ikea U.S. E., LLC,* 435 F. Supp. 3d 816, 823 (S.D. Ohio 2020).

"Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law." *Klauss vs. Marc Glassman, Inc. No. 84799,* 2005 WL 678984 ¶ 18 (Ohio Ct of App.8th Dist. March 24, 2005). "However, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Id.*  "The inquiry as to whether the danger is open and obvious is one that must be considered objectively, without regard to the plaintiff's conduct in encountering it." *Goodson v. Millennium & Copthorne Hotels,* No. 1:13-CV-502, 2015 WL 74271, at *4 (S.D. Ohio Jan. 6, 2015) citing *Armstrong,* 99 Ohio St.3d at 92.

As the Ohio Supreme Court in *Armstrong* discussed, courts considering the open and obvious defense must focus on the duty owed in light of the danger presented on the property owner's premises and whether that danger was open and obvious.  "[W]e reiterate that when courts apply the rule, they must focus on the fact that the doctrine relates to the threshold issue of duty.  By focusing on the duty prong of negligence, the rule properly considers the nature of the

13

dangerous condition itself, as opposed to the nature of the plaintiff's conduct in encountering it. The fact that a plaintiff was unreasonable in choosing to encounter the danger is not what relieves the property owner of liability.  Rather, it is the fact that the condition itself is so obvious that it absolves the property owner from taking any further action to protect the plaintiff." *Armstrong,* 99 Ohio St. 3d 79, 82, 788 N.E.2d 1088.

As the Sixth Circuit has stated, "although the open-and-obvious doctrine goes to the existence of a duty, which is a question of law, observability can be rendered a question for the jury when the underlying facts are disputed and reasonable minds could disagree." *Andler v. Clear Channel Broad., Inc.,* 670 F.3d 717, 725 (6th Cir. 2012).  The majority of Ohio courts that have considered the issue hold that "even if a plaintiff establishes that an unnatural accumulation existed, to show liability on the part of the landlord, the plaintiff bears the additional burden of showing that the condition was not open and obvious."  *Thatcher v. Lauffer Ravines, L.L.C.,* 2012-Ohio-6193, ¶ 20, modified on reconsideration *sub nom*. *Cecilia Thatcher v. Lauffer Ravines, L.L.C.,* 2013-Ohio-765.  See also *Burress v. Associated Land Grp.,* 2009-Ohio-2450, ¶ 14 (" However, even when a plaintiff's resulting slip and fall was due to unnatural accumulations of snow and ice, numerous appellate districts have found the open and obvious doctrine applicable, thus absolving the duty of care on the part of the landowner.") citing *Mounts v. Ravotti,* No. 07 MA 182, 2008–Ohio–5045, ¶ 53.  *Cullman,* 2020 WL 868208, at *5 (S.D. Ohio Feb. 21, 2020) citing *Unger v. U.S. Postal Serv.,* No. 3:06CV034, 2008 WL 11351323, at *5 (S.D. Ohio May 1, 2008) (holding that, even if the ice formed from an unnatural accumulation of water, the post office owed no duty because the ice was open and obvious).

Here, photographs taken by Hughes at the time of the incident show snow and ice around

14

the premises and near and around the pumps. Hughes testified it had snowed a few days before the incident and it was cold on the day he fell. Pictures further show a patch of ice on the drive near the pump that is clearly visible. The photos taken from his car of the ground where he stepped show clearly discolored surfaces darker than the clear areas outside the pump radius, indicating ice.

Thus, the Court finds the undisputed, objective photographic evidence shows ice upon which Hughes slipped was open and obvious.

Nor are there any attendant circumstances that would have impeded Hughes ability to see the ice. "An exception to the open and obvious doctrine is the existence of attendant circumstances. (Internal citations omitted). These attendant circumstances may exist which distract an individual from exercising the degree of care an ordinary person would have exercised to avoid the danger, and may create a genuine issue of material fact as to whether a hazard is open and obvious. For this exception to apply, an attendant circumstance must divert the attention of the injured party, significantly enhance the danger of the defect, and contribute to the injury." *Armstrong,* 2018-Ohio-1018, ¶ 35, 98 N.E.3d 328, 336. The testimony and evidence demonstrate there were no attendant circumstances that would have impeded Hughes from observing the ice on the ground. It was a clear day, not overcast nor dark. There was no obstruction between Hughes and the ice.

Ohio law is clear that whether a danger is open and obvious is a question of law for the court unless there exists some disputed issue of fact that raises an issue of whether the danger was reasonably observable. While the Court is reluctant to take a case out of the hands of a jury, here, unlike most cases, there is clear photographic evidence of the area at the time Hughes

15

slipped and fell.   Upon review of these photographs and the testimony about the same, the Court grants summary judgment for Defendant on Plaintiff's claims as the danger was open and obvious.  Because it was an open and obvious danger, Speedway owed Hughes no duty to warn and therefore, Hughes negligence claim fails as a matter of law.

Therefore, for the foregoing reasons, the Court summary judgment for Speedway.

**IT IS SO ORDERED.**

**DATE: May 26, 2026**

 **s/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**